UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DONOVAN V.,[1]

    **Plaintiff,**

v.

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

    **Defendant.**

Case No. 3:23-cv-14338
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Donovan V. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

I.       **PROCEDURAL HISTORY**

On October 31, 2019, Plaintiff filed his application for benefits, alleging that he has been disabled since June 27, 2016. R. 135, 150, 316–22. The application was denied initially and upon reconsideration. R. 176–80, 185–87. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 188–89. ALJ John Campbell held a hearing on July 7, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 91–122 ("July 2020 hearing"). In a decision dated October 1, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 27, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 154–66 ("the 2020 decision"). On August 24, 2022, the Appeals Council granted Plaintiff's request to review, vacated the 2020 decision, and remanded the case for further proceedings. R. 172–73.[3]

---

[3] The Appeals Council remanded the case for resolution of the following issue:

> The hearing decision does not contain a discussion of the admissibility of untimely submitted evidence. When a claimant or appointed representative informs the agency about or submits evidence less than five business days before the hearing and the Administrative Law Judge finds that the circumstances in 20 CFR 404.935(b) do not apply, the Administrative Law Judge will identify the evidence and explain the reason for not considering it (HALLEX I-2-6-59 C). A hearing was held on July 7, 2020. Evidence relevant to the period at issue, from Ocean Medical Center, dated May 20, 2017 (26 pages) and Ocean Medical Center, dated January 14, 2019 (21 pages), both received into the electronic folder on September 25, 2020, was not admitted into the record. The decision does not contain an explanation for this omission. Rather, the decision states that the claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (Decision, page 1). Upon remand, this evidence should be entered into the record (HALLEX I-2-1-15 and I-2-1-20).

> Upon remand, the Administrative Law Judge will:

> - Consider the evidence from Ocean Medical Center, dated May 20, 2017 (26 pages) and Ocean Medical Center, dated January 14, 2019 (21 pages), received into the electronic folder on September 25,

2

Following remand from the Appeals Council, the ALJ held another hearing on December 2, 2022, at which Plaintiff's counsel appeared and, in light of difficulty communicating with Plaintiff, the ALJ rescheduled the hearing. R. 85–90. At the rescheduled hearing on March 7, 2023, Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 51–84 ("March 2023 hearing"). In a decision dated April 4, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 27, 2016, the alleged disability onset date, through March 31, 2021, the date on which Plaintiff was last insured for benefits. R. 17–45 ("2023 decision"). That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 14, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 3, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 16.[4] On that same day, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

---

> 2020, and ensure that all exhibits are selected, arranged, and marked, pursuant to HALLEX I-2-1-15 and I-2-1-20.
>
> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

*Id*.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

5

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.   Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ's 2023 DECISION AND APPELLATE ISSUES

Plaintiff was 31 years old on March 31, 2021, the date on which he was last insured for benefits. R. 20, 43. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 27, 2016, his alleged disability onset date, and March 31, 2021. R.20.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obstructive sleep apnea, migraine headaches, lumbar degenerative disc disease, degenerative joint disease of the knees, major depressive disorder, adjustment disorder with anxiety, post-traumatic stress disorder, attention deficit hyperactivity disorder ("ADHD"), and obesity. *Id*. The ALJ also found that hearing loss/tinnitus, Vitamin D deficiency, left gastrocnemius muscle strain and cervical/thoracic degenerative disc disease were not severe impoairments. R. 20–22.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–25.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 25–43. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a customer service clerk and a department manager. R. 43.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a marker, a routing clerk, and a mail clerk–existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 43–44. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 27, 2016, his alleged disability onset date, through March 31, 2021, the date on which he was last insured. R. 44–45.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief in Support of Review,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

## IV.   DISCUSSION

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climb ramps or stairs, never climb ropes, ladders or scaffolds, does not work at

9

> unprotected heights, around exposed moving mechanical parts or with dangerous heavy machinery or equipment such as that which cuts, tears, crushes, shears or punctures in its operations, occasionally balance, stoops, kneels, crouches and crawls, works with occasional exposure to extreme heat or cold and humidity. He works indoors, does not work around flashing lights or strobes, uses tinted eyeglass lenses while outdoors, works in environments of up to and including moderate noise intensity level. He carries out simple instructions, performs simple routine tasks, makes simple workplace decisions, occasionally adjusts to changes in workplace routines, maintains contact frequently with supervision, occasionally with coworkers and occasionally with the public.

R. 25. Plaintiff argues that substantial evidence does not support the RFC determination because the ALJ failed to properly consider his ongoing severe migraine headaches and limitations flowing from that impairment. *Plaintiff's Brief in Support*, ECF No. 10, pp. 23–24; *Plaintiff's Reply Brief*, ECF No. 13, pp. 5–9. For the reasons that follow, this Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the present case, when finding that Plaintiff had the RFC to perform a limited range of light work, the ALJ detailed the record evidence, including, *inter alia*, record evidence related to Plaintiff's migraine headaches:

> The claimant indicated on January 19, 2017 that he had been getting Botox injections for headaches, which helped him every three months since 2014 with his most recent injection in May 2016 (Exhibit 1F). He underwent Botox treatment on January 27, 2017 (Exhibit 1F).
>
> On January 19, 2017, Shuja Sheikh, M.D., examined the claimant (Exhibit 10F). He rated them at 10 out of 10. His migraines occurred twice a week and very severe migraines occurred twice a month. Triggers were bright lights, too much TV watching or using the phone. He had been undergoing Botox injections every three months since 2014. His most recent injection occurred in May 2016. His medications included Gabapentin and Imitrex. He was to undergo a consultation for Botox injections. His injection occurred on Janaury [sic] 27, 2017.
>
> Abdul Alchaki, M.D., examined the claimant on March 3, 2017 (Exhibit 10F). He reported that Botox helped a lot in reducing the severity and frequency of his migraine headaches. He was to discontinue treatment with Gabapentin. His next session was to occur on May 2, 2017. The claimant sought treatment for migraine headache pain at Ocean Medical Center on May 20, 2017 (Exhibit 7F). His migraines occurred 1 to 2 times a month. His medications included Concerta, Tizanidine, Ambien and Vicodin. His neurological examination was non-focal. He was provided with intravenous Reglan, Benadryl and Toradol.
>
> Dr. Alchaki noted on May 26, 2017 that the claimant had a migraine during the previous week (Exhibit 10F). He went to the emergency room for treatment and was provided with abortive intravenous medication. He had experienced 4 to 5 migraines since his May 2, 2017 appointment, which was improved. *His headaches could continue for 6 hours to 2 days.*
>
> On August 8, 2017, the claimant indicated that he was most recently treated on May 2, 2017 (Exhibit 10F). Botox injections had really helped his headache pain. He underwent Botox injections.
>
> Shefali Gandhi, D.O, examined the claimant on July 31, 2017 (Exhibit 10F). *He had severe migraines once or twice every two weeks and they continued for 2 to 9 hours.* He took Imitrex as needed. Light bothered him. He avoided bright lights and wore tinted yellow glasses when he drove at night. He had been undergoing Botox injections.
>
> The claimant was advised to contact neurology on May 14, 2019 by pain management so he could undergo Botox injections (Exhibit 2F). The claimant

informed Dr. Husar on September 10, 2019 that he was experiencing headaches about once a month on Botox. He had been off Botox and was experiencing them 3 to 4 times a week. The claimant had previously not followed up with treatment but asked on September 10, 2019 to reinstate it and so was referred for treatment. He was to use Imitrex as abortive treatment.

The claimant admitted to Dr. Rorro on September 6, 2019 that his Gabapentin had reduced his migraine headache pain (Exhibit 2F). He needed to treat with Imitrex for breakthrough migraines and was interested in treating with Botox.

Dr. Husar examined the claimant on September 10, 2019 (Exhibit 2F). He had migraines once a month while on Botox. He had been off the medication and was having migraines three to four times a week. He was referred for Botox therapy. His Imitrex was continued for abortive therapy. He had been most recently treated by neurology in 2017.

The claimant indicated on September 24, 2019 that he had most recently treated with Botox in August 2017 but stopped all treatment with medications for his headaches in December 2017 (Exhibit 2F). *In 2019, he was having headaches daily but they became bad 1 to 2 times a week.* He was treated with Botox.

On November 29, 2019, Dr. Rorro examined the claimant (Exhibit 3F). The claimant reported that Gabapentin lessened his migraines. He had to take Imitrex for breakthrough migraines and he saw neurology and had Botox again, which helped to some degree but not completely.

The claimant indicated on February 13, 2020 at the time he underwent treatment with Botox that his headache severity had improved by 50 percent and the duration of the headaches was cut in half (Exhibit 10F). His symptoms started to worsen at the 90 day point and he used Imitrex as an abortive medication about 4 times a month.

The claimant underwent Botox injections on July 17, 2020 (Exhibit 10F). He had most recently undergone Botox treatment on February 13, 2020. His relief lasted through May 2020 and he had a 40 percent reduction in migraine severity. He continued to use Imitrex.

On April 22, 2021, Shaul Shaulov, M.D., examined the claimant (Exhibit 11F). The claimant was not undergoing Botox injections due to the pandemic. He was interested in a cephaly device. He was taking Gabapentin but it did not seem to help with migraines. He was previously treated at the clinic in September 2019. Botox had reduced his headaches from five episodes a week to 1 to 2 per month. His most recent Botox injection occurred over a year earlier. He was treating his headaches with Gabapentin, Sumatriptan, ibuprofen and marijuana. After he would sleep, they would resolve. He was to restart treatment with Botox. He underwent Botox injections on May 18, 2021.

R. 30–32 (emphasis added). The ALJ went on to consider Plaintiff's subjective complaints. R. 26–27, 37–39.[5] The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 27; *see also* R. 37. The ALJ specifically considered Plaintiff's testimony regarding his migraine

---

[5] "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

headaches from the July 2020 and March 2023 hearings as well as his other complaints in the record regarding such headaches:

> The claimant testified on July 7, 2020 about a history of traumatic brain injury during his Navy service on a submarine, that required his separation from service, and that has continued to dog him into civilian life. He fell on duty and hit his head in the fall. The claimant alleges a problem with his upbringing. As he describes his biological mother as a "prostitute" and a "heroin addict" (his words) who had four children by three different men, and he describes his father as an alcoholic. The claimant states he was consigned to the foster care system. The claimant alleges problems with concentration, persistence and pace, mood and irritability with others, and information processing. He graduated high school and had some training in computer programming; his service was in the Navy as a Fire Control Technician on a submarine and rose to an E-3 paygrade. The claimant's daily headaches do not create problems for the claimant, *but he alleges occasional migraines that can require retreat into a dark room.* . . .
>
> The claimant testified on March 7, 2023 that his medications included Zoloft, Gabapentin, Ritalin, and Methocarbamol. His depression is better with his medications than without them. He still has periods when he does not get out of bed. He had experienced three suicide attempts since 2020. His anxiety is terrible. . . . *Every suicide attempt he has experienced was caused by migraine headaches. He gets them once a week and they can last up to 8 hours. He has a closet that is fully blacked out so he can isolate there. He needs tinted glasses if he goes outside.* . . .

R. 26–27 (emphasis added).

> As to the claimant's migraine headache pain, the claimant stopped treatment with Botox injections for his headaches in May 2016 prior to the start of the period at issue (Exhibit 10F). In March 2017, he admitted that Botox reduced his headache severity and frequency. He returned to treatment with Botox on May 2, 2017. While he required treatment in a hospital emergency room for his migraines on May 20, 2017, he reported that his migraines were only occurring 1 to 2 times a month (Exhibit 7F). He underwent additional Botox treatment on August 8, 2017 (Exhibit 10F). The claimant admitted to Dr. Gandhi on July 31, 2017 that he was having severe migraines once or twice every two weeks. He additionally treated with Imitrex. Lights bothered him and he wore tinted glasses at night while driving. The claimant stopped treating with Botox again between August 2017 and May 2019 and admitted that he stopped all of medications for headaches in December 2017 (Exhibit 2F). *As a result, the frequency of his headaches had increased. He returned to treatment with Botox injections in September 2019 and experienced an immediate improvement in the frequency of his headaches.* He was able to continue treatment through July 2020 but stopped due to the pandemic (Exhibits 10F and 11F). He returned to treatment with Botox injections in May 2021 (Exhibit 11F).

> <u>The medical record suggests</u> that the claimant attained a significant benefit from treatment with Botox injections and <u>that medication alone did not control his headache pain</u>.

R. 38–39 (emphasis added). The ALJ explained that he "assigned a light level of exertion with additional postural and environmental limitations, noise, lights, a limitation against outdoor work and the use of glasses when outdoors to consider [Plaintiff's] headache pain." R. 39.

Plaintiff challenges the ALJ's RFC determination in this regard, arguing that, although his headaches had improved with treatment, he still continued to experience disabling migraines that prevented him from working on a regular and continuous basis. *Plaintiff's Brief in Support of Review*, ECF No. 10, pp. 23–26; *Plaintiff's Reply Brief*, ECF No. 13, pp. 4–9. Plaintiff specifically contends that the ALJ omitted certain facts and erred in considering his subjective complaints when crafting the RFC. *Id*. Plaintiff argues that the ALJ's errors resulted in a flawed RFC, which failed to include any limitations for time off-task and/or absences resulting from his ongoing severe migraine headaches. *Id*.

The Court agrees that this issue requires remand. In discounting Plaintiff's subjective statements regarding his migraine headaches, the ALJ referred to evidence that Botox had reduced the severity and frequency of Plaintiff's migraine headaches. R. 38–39. However, the ALJ's summary of the evidence on this issue omitted crucial details that the ALJ had earlier recognized regarding the severity and frequency of Plaintiff's migraines, thereby minimizing to an unwarranted degree the functional impact of those episodes. *Compare* R. 30–32 *with* R. 38–39. For example, in his discussion discounting Plaintiff's subjective complaints, the ALJ noted Plaintiff's May 2017 report that his "migraines were only occurring 1 to 2 times a month[,]" R. 39, but wholly failed to mention that these headaches "could continue for 6 hours to 2 days." R. 31. Similarly, in discounting Plaintiff's subjective complaints, the ALJ noted that Plaintiff

15

"returned to treatment with Botox injections in September 2019 and experienced an immediate improvement in the frequency of his headaches[.]" R. 39. However, as the ALJ had earlier noted, Plaintiff also reported in that same month that he had continued to experience migraines once a month, R. 31. Moreover, the ALJ noted that, in February 2020, Plaintiff "used Imitrex as an abortive medication about 4 times a month" even while he continued to treat with Botox. R. 31.[6]

Additionally, and although not mentioned by the ALJ, Plaintiff points to evidence that, in July 2021, "he was having several severe migraines, the type that required him to absent himself to a dark room for the better part of the day, a couple of times per month." *Plaintiff's Reply Brief*, ECF No. 13, p. 7 n.2 (citing R. 2687); *see also*, R. 2690 (reflecting a July 22, 2021, treatment note indicating that Plaintiff had received Botox injections in May 2021, but had still experienced two- to three days-long headaches that required sumatriptan, a rescue medication).

Although an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), the ALJ may not reject subjective statements "'for no reason or the wrong reason[.]'" *Rutherford*, 399 F.3d at 554 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Here, the ALJ has not explained how the medical record, which reflects undisputed continued pain despite treatment with Botox and other prescribed medications, is inconsistent with or otherwise undermines Plaintiff's statements. R. 26–27, 30–32, 38–39; *cf. Tracy F. v. O'Malley*, No. 4:22-CV-1851, 2024 WL 4592351, at *11 (M.D. Pa. Oct. 28, 2024) ("The ALJ did not explain how or why the examination records were

---

[6] Additionally, in recounting Plaintiff's testimony from the July 2020 hearing, the ALJ stated that Plaintiff's "daily headaches do not create problems for the claimant, but he alleges *occasional* migraines that can require retreat into a dark room." R. 26 (emphasis added). While Plaintiff testified that Botox "reduces the severity and frequency of completely debilitating migraines" (the type "where I have to lock myself in a closet for nine hours" and which occurred three to four times a week), he still experiences those migraines "three to four times every two weeks[.]" R. 108.

16

inconsistent with Plaintiff's testimony about the frequency of her migraine symptoms. Therefore, the ALJ's conclusion that Plaintiff's statements about the frequency of her migraines are inconsistent with examination records is insufficient to permit review."); *id.* at *9 ("Here, Plaintiff pursues regular treatment with a neurologist. She is prescribed three different medications which she takes daily. She also receives Botox injections from her neurologist every three months. . . ." "Although [the ALJ] acknowledged that the Botox 'helped' he did not discuss that Plaintiff's migraine symptoms remain uncontrolled despite non-conservative treatment. Therefore, substantial evidence does not support the ALJ's conclusion that Plaintiff's statements about the intensity, persistence, and limiting effects of her migraine symptoms are inconsistent with her course of treatment."). At bottom, this Court cannot say that, in discounting Plaintiff's subjective complaints, the ALJ's summary of the evidence, R. 38–39, reflects a fully accurate recitation of the record evidence.

While it is true that a claimant's "pain may be constant and uncomfortable" and still not be disabling, *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986), the ALJ in this case has not, in the view of this Court, sufficiently explained why Plaintiff's continued experience of uncontrolled migraine pain was not disabling.

Moreover, the ALJ's RFC contains no restrictions for absences or time off task. R. 25. This omission takes on great significance when one considers that the vocational experts who testified at the July 2020 and March 2023 hearings both testified that employers tolerate only one absence per month and only 10% time off task during a work day. R. 79–80, 118–19. Based on this record, the Court cannot therefore meaningfully review the ALJ's RFC finding, nor can it determine whether substantial evidence supports that finding.

Accordingly, this Court concludes that remand of the matter for further consideration is appropriate.[7] Moreover, remand is appropriate even if, upon further consideration of Plaintiff's migraine headaches and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  August 5, 2025                           *s/Norah McCann King*
                                               NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's migraine headaches and of the RFC determination, the Court does not consider those claims.